1
2
3
4
5
6
7

O

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11  BENITO RAMOS,                    )   Case No. CV 09-1644-OP
12                   Plaintiff,      )
                     v.              )   MEMORANDUM OPINION; ORDER
13                                   )
    MICHAEL J. ASTRUE,               )
14  Commissioner of Social Security, )
15                   Defendant.      )
                                     )
16 ─────────────────────────────────
17        The Court[1] now rules as follows with respect to the disputed

18  issues listed in the Joint Stipulation ("JS").[2]

19  / / /

20  / / /

21  / / /

22  / / /

23  ─────────────────────────

24        [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
    the United States Magistrate Judge in the current action.  (See Dkt. Nos. 8, 9.)
25
26        [2]  As the Court stated in its Case Management Order, the decision in this
    case is made on the basis of the pleadings, the Administrative Record, and the
27  Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal
    Rules of Civil Procedure, the Court has determined which party is entitled to
28  judgment under the standards set forth in 42 U.S.C. § 405(g).

1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1.   Whether the Administrative Law Judge ("ALJ") properly considered Plaintiff's subjective complaints and credibility;

2.   Whether the ALJ properly evaluated the lay witness testimony; and

3.   Whether the ALJ afforded Plaintiff's treating physician appropriate weight.

(JS at 3.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

2

**III.**

**DISCUSSION**

**A.    The ALJ Properly Considered Plaintiff's Subjective Complaints and
Properly Assessed Plaintiff's Credibility.**

Plaintiff contends that the ALJ failed to provide specific and legitimate
reasons for rejecting Plaintiff's subjective complaints of pain.  (JS at 3-5.)  The
Court disagrees.

**1.    Applicable Law.**

An ALJ's assessment of pain severity and claimant credibility is entitled to
"great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.
Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a
claimant's testimony is a critical factor in a decision to deny benefits, the ALJ
must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231
(9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also
Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that
claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical
evidence of an impairment which could reasonably be expected to produce some
degree of pain and/or other symptoms, and the record is devoid of any affirmative
evidence of malingering, the ALJ may reject the claimant's testimony regarding
the severity of the claimant's pain and/or other symptoms only if the ALJ makes
specific findings stating clear and convincing reasons for doing so.  See Cotton v.
Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d
1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993);
Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of his
symptoms is credible, the ALJ may consider, *inter alia*, the following evidence:
(1) ordinary techniques of credibility evaluation, such as the claimant's reputation

3

1   for lying, prior inconsistent statements concerning the symptoms, and other

2   testimony by the claimant that appears less than candid; (2) unexplained or

3   inadequately explained failure to seek treatment or to follow a prescribed course of

4   treatment; (3) the claimant's daily activities; and (4) testimony from physicians

5   and third parties concerning the nature, severity, and effect of the claimant's

6   symptoms.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also

7   Smolen, 80 F.3d at 1284.

8       SSR 96-7p[3] further provides factors that may be considered to determine a

9   claimant's credibility such as: 1) the individual's daily activities; 2) the location,

10  duration, frequency, and intensity of the individual's pain and other symptoms; 3)

11  factors that precipitate and aggravate the symptoms; 4) the type, dosage,

12  effectiveness, and side effects of any medication the individual takes or has taken

13  to alleviate pain or other symptoms; 5) treatment, other than medication, the

14  individual receives or has received for relief of pain or other symptoms; 6) any

15  measures other than treatment the individual uses or has used to relieve pain or

16  other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes

17  every hour, or sleeping on a board); and 7) any other factors concerning the

18  individual's functional limitations and restrictions due to pain or other symptoms.

19  SSR 96-7p.

20      **3.   Analysis.**

21      Here, the ALJ discredited Plaintiff's subjective symptoms for several

22  reasons:  (i) Plaintiff's claims are unsupported by the objective medical evidence;

23  (ii) Plaintiff's daily activities are inconsistent with his allegations of disabling

24  pain; and (iii) Plaintiff's testimony regarding his literacy in English was less than

25  candid.  (Administrative Record ("AR") at 23-24.)

26  _____

27      [3]  Social Security Rulings are binding on ALJs.  See Terry v. Sullivan, 903

28  F.2d 1273, 1275 n.1 (9th Cir. 1990).

4

1    First, the ALJ based his adverse credibility determination of the findings of

2    the medical sources and the lack of objective medical evidence, including

3    treatment records, to support Plaintiff's disabling symptoms.  (Id. at 24.)  The ALJ

4    stated:

5         The claimant's credibility is reduced by the lack of objective

6         medical evidence to substantiate his claims.  I note that no examining

7         or reviewing physician had rendered an opinion fully supporting the

8         claimant's allegations.

9         Further, despite access to medical care, the claimant has had

10        very little treatment for his lumbar spine since being released by Dr.

11        Schmidt in 2004.  Indeed, the bulk of the medical records during this

12        time period do not even reference back pain.  In addition, there

13        appears to be no treatment whatsoever between February 2004 and

14        February 2006 when the claimant sought treatment in Tijuana.  In

15        August 2006, he began treatment at El Monte Comprehensive Health

16        Center and then at LAC USC.  Even if the claimant could not afford

17        treatment, which he did not allege, he could have accessed the county

18        facility he eventually went to.

19        I also noted that the claimant testified to having side effects from

20        medications, as well as having trouble sleeping.  However, these

21        allegations are not documented in the medical records.  It seems

22        reasonable to expect that an individual would first complain to his

23        doctor about medication or sleep problems, and seek adjustment or

24        change his medications, rather than waiting until a disability hearing to

25        first complain.

26   (Id. at 24 (citations omitted).)  The objective medical evidence does not support

27   Plaintiff's allegations of disabling symptoms.  As to Plaintiff's back pain, the ALJ

28   noted that Plaintiff has had little treatment for his lumbar spine after being

5

released from the hospital in 2004.  (AR at 293-314.)  In fact, the medical records
do not reference any complaints of back pain.  (Id.)  While Plaintiff points to
medical evidence regarding potential back impairments, no doctor opined that
Plaintiff suffered or complained of any functional limitations as a result.  (Id. at
214-66, 292.)  As Defendant points out, there is no evidence of treatment from
February 2004 through February 2005.  Additionally, Plaintiff's allegations of
medication side-effects is not documented in the record prior to his disability
hearing.  Thus, the objective medical evidence does not substantiate Plaintiff's
allegations of disabling symptoms.

      Next, relying upon Plaintiff's own description of his daily activities, the
ALJ found Plaintiff not be a credible witness and discredited the severity of his
subjective complaints.  (Id. at 24.)  According to Plaintiff's own statements and
testimony, he was able to perform household chores including laundry,
vacuuming, and yard work; he also was able to shop for groceries, take his
children to and from school, drive, prepare meals for himself and others, take his
medication, and groom himself.  (Id. at 120-35.)  Plaintiff also managed his own
finances, attended church twice a week, and went out alone.  (Id.)  The Court finds
that the ALJ could properly rely on Plaintiff's daily activities, such as, *inter alia*,
completing household chores, cooking, and shopping, to support his adverse
credibility determination.  See, e.g., Thomas, 278 F.3d at 958-59 (ALJ may
properly consider inconsistencies between claimant's testimony and claimant's
daily activities); Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir. 1999) (ALJ
may properly rely on contradictions between claimant's reported limitations and
claimant's daily activities); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)
(daily activities inconsistent with total disability undermined subjective testimony
of disabling pain); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may
properly rely on claimant's daily activities, including ability to drive); Fair v.
Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ may properly rely on daily

1  activities inconsistent with claim of disabling pain); SSR 96-7p.

2        Finally, the ALJ also based his adverse credibility determination on

3  Plaintiff's testimony regarding his literacy in English.  (AR at 24.)  The ALJ

4  stated:

5        Finally, the claimant claims that he is illiterate in the English language.

6        This allegation is less than credible for several reasons.  First, the

7        claimant has been in the United States for 32 years.  Second, he is a

8        United States citizen, and even passed the citizenship test in English

9        which requires a basic ability to communicate in, read, and write

10       English. This raises considerable doubt under 8 CFR 312.1.  Claimant's

11       ability to portray himself as illiterate in English detracts from his overall

12       credibility.  However, in the end, determining whether or not the

13       claimant is literate in English is not essential to making a determination

14       at step four.

15 (Id. at 24 (citations omitted).)  By utilizing ordinary techniques of credibility

16 evaluation, the ALJ rejected Plaintiff's credibility partially based on his less than

17 candid testimony regarding his literacy in English.  Thomas, 278 F.3d at 958-59;

18 see also Smolen, 80 F.3d at 1284.  Assuming that the ALJ erred in relying on

19 Plaintiff's literacy in English, the Court notes that any such error is harmless.  The

20 adverse credibility determination would remain unchanged, as the ALJ relied on

21 the lack of objective medical evidence and Plaintiff's daily activities to support the

22 determination.  Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless

23 error rules applies to review of administrative decisions regarding disability).

24       Based on the foregoing, the Court finds that the ALJ provided clear and

25 convincing reasons, supported by substantial evidence, for rejecting Plaintiff's

26

27

28

1 subjective symptoms and discounting his credibility.  Thus, there was no error.[4]

2 **B.    The ALJ Properly Considered the Lay Witness Testimony.**

3        Plaintiff contends the ALJ failed to provide sufficient reason for

4 disregarding the testimony of a lay witness, Rebecca Ramos.  (JS at 11-13.)  The

5 Court disagrees.

6        Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to

7 medical evidence, the Commissioner "may also use evidence from other sources to

8 show the severity of  [an individual's] impairment(s) and how it affects [her]

9 ability to work."  Further, the Ninth Circuit has repeatedly held that "[d]escriptions

10 by friends and family members in a position to observe a claimant's symptoms and

11 daily activities have routinely been treated as competent evidence."  Sprague v.

12 Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  This applies equally to the sworn

13 hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th

14 Cir. 1996)), as well as to unsworn statements and letters of friends and relatives.

15 See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000).

16 If the ALJ chooses to reject such evidence from "other sources," he may not do so

17 without comment.  Nguyen, 100 F.3d at 1467.  When rejecting lay witness

18 testimony, the ALJ must provide "reasons that are germane to each witness."

19 Dodrill, 12 F.3d at 919.

20        In this case, the ALJ explicitly considered Ms. Ramos' testimony and

21

22        [4] In his adverse credibility determination, the ALJ also relied on two prior
23 instances where Plaintiff traveled to Mexico to support a finding that Plaintiff can
   perform, at a minimum, sedentary work.  (AR at 24.)  The Court is unpersuaded
24 that this prior travel, occurring rather infrequently and at different time periods, is
   a reliable indicator that Plaintiff is able to perform sedentary activity on a daily
25 basis.  Accordingly, the Court does not find this particular argument persuasive.
26 However, the ALJ provided other clear and convincing reasons, supported by
   substantial evidence, to reject Plaintiff's subjective symptoms and to discount his
27 credibility.  See supra, Discussion, Part III.A.  Thus, any error regarding the
28 adverse credibility determination is harmless.  Curry, 925 F.2d at 1131.

1  afforded it little weight.  (AR at 25.)  The ALJ rejected Ms. Ramos' statements for
2  the following reasons:  (i) the statement was unsworn, enabling Ms. Ramos not to
3  suffer any consequences for perjured statements; (ii) Ms. Ramos did not testify at
4  the hearing, preventing any cross-examination regarding her observations; (iii)
5  Ms. Ramos may have been biased, financially or personally, as she lives with
6  Plaintiff; and (iv) Ms. Ramos' statements are unsupported by the medical
7  evidence.  (Id.)  The ALJ stated, "I have given Ms. Ramos's statements of
8  disabling symptoms little weight."  (Id.)

9        The Court finds that the ALJ erred in affording Ms. Ramos' statements less
10  weight because the statements were unsworn or due to the fact that Ms. Ramos did
11  not testify at the hearing.  As stated above, the ALJ must consider and properly
12  reject sworn and unsworn testimony of lay witnesses.  See Schneider, 223 F.3d at
13  974; Nguyen, 100 F.3d at 1467.  Despite this failing, any error here was harmless,
14  as the ALJ provided other reasons germane to the witness for giving her
15  statements less weight.  Curry, 925 F.2d at 1131.  First, the ALJ relied on the fact
16  that Ms. Ramos may have been financially or personally biased, as she may have
17  benefitted from a disability award.  (AR at 25); see also Regenniter v. Comm'r of
18  Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999) (the mere fact that the lay
19  witness is a relative may not be a valid a reason alone for rejecting lay witness
20  testimony); but see Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (the
21  ALJ's consideration of the claimant's prior girlfriend's close relationship with the
22  plaintiff and desire to help him as a possible reason for bias was a reason germane
23  to that witness).  Next, the ALJ also reasoned that Ms. Ramos' allegations were
24  unsupported by the objective medical evidence, a finding that is consistent with
25  the record. (AR at 25); see supra, Discussion Part III.A; see infra, Discussion Part
26  III.C.  Accordingly, the  Court finds that the ALJ provided sufficient reasons
27  germane to the witness for giving her statement less weight.  Thus, there was no
28  error.

9

1    **C.**    **The ALJ Properly Considered the Opinion of the Treating Physician.**

2         Plaintiff's last contention is that the ALJ failed to provide specific and

3    legitimate reasons, supported by substantial evidence, to reject the findings of his

4    treating physician, Dr. Isaac Schmidt.  (JS at 15-17.)  The Court disagrees.

5         **1.**    **Applicable Law.**

6         It is well-established in the Ninth Circuit that a treating physician's opinions

7    are entitled to special weight, because a treating physician is employed to cure and

8    has a greater opportunity to know and observe the patient as an individual.

9    McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating

10   physician's opinion is not, however, necessarily conclusive as to either a physical

11   condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,

12   751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on

13   whether it is supported by sufficient medical data and is consistent with other

14   evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating

15   physician's opinion is uncontroverted by another doctor, it may be rejected only

16   for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

17   1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating

18   physician's opinion is controverted, it may be rejected only if the ALJ makes

19   findings setting forth specific and legitimate reasons that are based on the

20   substantial evidence of record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

21   2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th

22   Cir. 1987).

23        However, the Ninth Circuit also has held that "[t]he ALJ need not accept the

24   opinion of any physician, including a treating physician, if that opinion is brief,

25   conclusory, and inadequately supported by clinical findings."  Thomas, 278 F.3d

26   at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.

27   1992).  A treating or examining physician's opinion based on the plaintiff's own

28   complaints may be disregarded if the plaintiff's complaints have been properly

1   discounted.  <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 602 (9th Cir.

2   1999); <u>see also</u> <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997); <u>Andrews</u>

3   <u>v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).  Additionally, "[w]here the opinion

4   of the claimant's treating physician is contradicted, and the opinion of a

5   nontreating source is based on independent clinical findings that differ from those

6   of the treating physician, the opinion of the nontreating source may itself be

7   substantial evidence; it is then solely the province of the ALJ to resolve the

8   conflict."  <u>Andrews</u>, 53 F.3d at 1041; <u>Magallanes</u>, 881 F.2d at 751; <u>Miller v.</u>

9   <u>Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985).

10      **2.   Analysis.**

11      Here, the ALJ considered Dr. Schmidt's opinion, determined it was not

12   entitled to controlling weight, and provided specific and legitimate reasons for

13   rejecting the opinion.  (AR at 22-23.)

14      The ALJ found that Dr. Schmidt's opinion was "dated" and "not supported

15   by the longitudinal records in the past three years" before the hearing.  (<u>Id.</u> at 22.)

16   The ALJ stated:

17

18      [I]n April 2007, the claimant's treating physicians from LAC USC

19      merely noted that he should lie on a hard bed and must avoid heavy

20      lifting.  The claimant has not pursued any significant treatment for his

21      lumbar spine since being released as permanent and stationary by Dr.

22      Schmidt.  Instead, it appears that he had only two examinations in a

23      year's time for complaints about his back.  He was also prescribed

24      medications and given patient education.  However, the claimant was

25      not given any recommendation for therapy or orthopedic clinic referral

26      which is readily available with the county health system managed by

27      LAC USC.  Indeed, the records from LAC USC militate against any

28      more restrictive limitations as the objective findings were minimal – on

11

1
2
3
4
5
6

June 1, 2007, the claimant had decreased range of motion of his back with no focal vertebral tenderness, no paraspinal muscle spasm, but straight leg raising was positive and on October 4, 2007 the claimant had no tenderness of the paraspinal muscle of his lower back. At other times, the claimant missed his appointments or merely came in for a blood pressure visit.

7
8
9
10
11
12
13
14
15

(Id. at 22-23 (citations omitted).)  The record is consistent with the ALJ's finding, and it reflects a stagnation or an improvement in Plaintiff's allegations of back pain, rather than an exacerbation of back pain.  (Id. at 293-314.)  While Plaintiff relies on Dr. Schmidt's opinion regarding Plaintiff's functional limitations, the Court notes that Dr. Schmidt's findings predate Plaintiff's most recent treatment records, and do not reflect the stagnation or improvement in Plaintiff's back pain. (Id. at 217, 228, 233-35, 240, 239-314.)  Thus, the ALJ properly afforded Dr. Schmidt's opinion less weight, as it was dated and inconsistent with the longitudinal record.

16
17
18
19
20
21

Next, in rejecting the opinion of Dr. Schmidt, the ALJ relied upon the medical opinions of two consultative physicians, Drs. Ibrahim Yashruti and H.M. Estrin.  (Id. at 21-23.)  On March 16, 2006, Dr. Yashruti performed an orthopedic evaluation on Plaintiff.  (Id. at 272-77.)  Based on his evaluation, Dr. Yashruti assessed Plaintiff's functional limitations as follows:

22
23
24
25
26
27

From a functional standpoint, the claimant can lift and carry 25 pounds occasionally and 10 pounds frequently.  He can stand on level ground six hours in an eight-hour workday.  He can sit six hours in an eight-hour workday with normal rest periods.  He is able to squat, kneel, crouch, and crawl frequently.  He is able to reach with the arms and manipulate with the hands with no limitations.

28

(Id. at 277.)  Dr. Yashruti's evaluation, based on independent clinical findings,

12

suggests a higher functioning of physical capacity than Dr. Schmidt found.[5]

On May 8, 2007, Dr. Estrin completed a physical residual functional capacity ("RFC") assessment for Plaintiff. (Id. at 282-29.) Dr. Estrin opined that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and stand, sit , or walk with normal breaks for six hours in an eight-hour workday. (Id. at 283.) Dr. Estrin also indicated that Plaintiff can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. (Id. at 284.) Here again, Dr. Estrin, based upon independent clinical findings, assessed a greater level of physical functioning than Dr. Schmidt's assessment. Thus, the opinions of the consultative physicians constitute substantial evidence since they were based on independent clinical findings, and any conflict between these findings and Dr. Schmidt's opinion was for the ALJ to resolve. See Andrews, 53 F.3d at 1041 (opinion of nontreating source based on independent clinical findings may itself be substantial evidence).

Finally, the ALJ indicated that even if Dr. Schmidt's opinion was fully credited, the non-disability finding would remain unchanged as Plaintiff would still be able to perform his past relevant work. (AR at 23.) The record supports the ALJ's finding as to Plaintiff's past relevant work.[6] (Id. at 25-26, 338-56.) Thus, any error by the ALJ here would be harmless. Curry, 925 F.2d at 1131.

Based on the foregoing, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to reject Dr. Schmidt's opinion. Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751;

---

[5]  On February 3, 2004, Dr. Schmidt advised Plaintiff to avoid "any heavy and/or repetitious lifting, carrying, pushing, pulling, bending, stooping, squatting, kneeling, prolonged standing, walking, etc." (AR at 217.)

[6]  Plaintiff does not contest his ability to perform his past relevant work. Thus, the Court declines to discuss this issue.

Miller, 770 F.2d at 849.  Thus, there was no error.

## IV.

## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated:  December 11, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge

14